UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 99-66 (DSD/JMM)


C. Earl Grant,

        Plaintiff,

v.                                                          **ORDER**

Gerald S. Golden and National
Board of Medical Examiners,

        Defendants.


    Toni M. Jackson, Esq., Lateesa T. Ward, Esq. and Jackson
    & Ward, 801 Nicollet Mall, Suite 1850, Minneapolis, MN
    55402, counsel for plaintiff.

    Janie S. Mayeron, Esq., and Leonard, Street & Deinard,
    150 Fifth Street, Suite 2300, Minneapolis, MN 55402,
    counsel for defendants.


This matter is before the court on defendants' motion for summary judgment. Based on a review of the file, record, and proceedings herein, the court grants defendant's motion in part and denies it in part.


**BACKGROUND**

This case arises out of a dispute over medical license testing. To become a licensed physician, a person must take and

pass certain licensing examinations, including the United States Medical Licensing Examination ("USMLE"), which is divided into three separate tests, known as "Steps 1, 2, and 3." Defendant National Board of Medical Examiners ("NBME") administers the USMLE, determining accommodations for Step 1 and 2 and scoring Steps 1, 2, and 3.[1]  Defendant Gerald S. Golden is vice president of examination services at NBME and acts as the company's medical school liaison.

Plaintiff C. Earl Grant started medical school at the University of Minnesota in September 1991. In March 1995, after several unsuccessful attempts by Grant to pass the Step 1 exam, Grant was diagnosed for the first time with Adult Attention Deficit Disorder. Grant advised NBME that he was disabled and requested that he be allotted additional time to take the exams. NBME refused when its outside experts concluded that Grant had submitted insufficient documentation to support his disability claim. Grant made another request for accommodation, which was also refused.

Grant responded by filing a lawsuit in federal court on April 3, 1996, alleging that NBME had discriminated against him on the basis of his disability in violation of the ADA and MHRA. The

---

[1] The state medical licensing authority, not NBME, determines accommodations for Step 3.

parties reached a confidential interim settlement agreement in which NBME permitted Grant to take the Step 1 exam in June 1996 with accommodation. Grant passed that exam. In August 1997, NMBE determined that additional medical documentation provided by Grant supported his request for accommodation on the Step 2 exam.

In late August, Grant took the Step 2 exam with accommodation. He failed the exam. On December 6, 1997, Grant requested a recheck of his score. On January 6, 1998, NBME reported to Grant that the score originally reported for August 1997 was accurate. In early March 1998, Grant again failed the Step 2 exam. Again, he requested a recheck and was informed by NBME that his score was correct.

In the meantime, Grant and NBME engaged in settlement negotiations concerning the federal lawsuit. On December 29, 1997, NBME and Grant reached a confidential settlement agreement. After two motions by NBME to the court to enforce the terms of this agreement, the settlement was memorialized in an agreement signed by Grant on June 19, 1998. On July 8, 1998, attorneys for the parties exchanged signature pages and the settlement check, and the attorneys signed a stipulation of dismissal with prejudice. On July 9, 1998, the court signed the stipulation of dismissal and the case was dismissed.

In August 1998, Grant again took the Step 2 exam, which he again failed. After requesting a recheck, NBME confirmed that he had failed the August 1998 exam. In accordance with the settlement agreement, Grant and his attorney reviewed his August 1997, March 1998, and August 1998 Step 2 exams. Grant and his attorney allege that neither 1998 exam had been re-scored and that the 1997 exam was only partially re-scored.

On August 11, 1998, Grant filed a charge with the Minnesota Department of Human Rights ("MDHR") alleging that NBME had engaged in reprisal discrimination against him by failing to re-score his August 1997 and March 1998 Step 2 exams. On November 19, 1998, the MDHR dismissed the charge. On January 19, 1999, Grant filed the present lawsuit in federal court alleging many of the same facts and claims that were asserted in the previous suit. On May 5, 1999, Grant filed a first amended complaint bringing the following claims: (1) violation of Title III of the Americans with Disabilities Act ("ADA"), 28 U.S.C. §§ 12102(2) and 12131(2); (2) violation of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.03, subd. 7; (3) negligent misrepresentation; (4) fraudulent misrepresentation; and (5) breach of contract. Defendants now bring a motion for summary judgment on each of Grant's claims except for breach of contract. During briefing of

4

the motion, Grant voluntarily dismissed his negligent misrepresentation claim.[2]

## A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c). A fact is material only when its resolution affects the outcome of the case. See Anderson, 477 U.S. at 248. A dispute is genuine if the

---

[2] Plaintiff asks the court to dismiss this claim without prejudice. However, plaintiff has failed to answer the defendants' argument that a negligent misrepresentation claim may not be based on the promise of some future act. See, e.g., Miller's Fairway, Inc. v. Schoenborn, 1997 WL 769528, at *2 (Minn. Ct. App. Dec. 16, 1997); Jacobs Mfg. Co. v. Sam Brown Co., 792 F. Supp. 1520, 1528 (W.D. Mo. 1992), aff'd, 19 F.3d 1259 (8th Cir. 1992) ("While it is possible to be negligent in failing to ascertain the truth or falsity of an existing fact, it is possible to be negligent in failing to ascertain the truth or falsity of one's future intentions."). Accordingly, the court will dismiss the negligent misrepresentation claim with prejudice.

5

evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 250. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23.

**B.   Pre-Discovery Motion for Summary Judgment**

In the present case, defendants bring a motion for summary judgment asking the court to issue an order limiting Grant's suit to his breach of contract claim only. Defendants make a number of legal arguments in support of its motion: (1) that this court lacks personal jurisdiction over defendant Golden; (2) that Grant has released all claims based on events occurring prior to July 9, 1998; (3) that Grant's ADA claims are either moot or speculative; (4) that defendants are not governed by MHRA; and (5) that, even if

6

Grant's ADA and MHRA claims are otherwise actionable, they are largely time-barred.

In response, Grant argues that summary judgment would be premature in light of the fact that discovery has not yet begun in this case. Ordinarily, summary judgment is proper "only after the nonmovant has had adequate time for discovery." In re TMJ Litigation, 113 F.3d 1484, 1490 (8th Cir. 1997). However, "[i]f a party opposing a summary judgment motion does not seek shelter under Rule 56(f) or otherwise ask for a continuance, a court generally does not abuse its discretion in granting summary judgment based on the record before it." Id. The critical test for the court is whether "the failure to allow discovery deprives the nonmovant of a fair chance to respond to the motion." Iverson v. Johnson Gas Appliance Co., 172 F.3d 524, 529 (8th Cir. 1999).

Here, Grant has not formally filed a Rule 56(f) motion for continuance. However, Grant's attorney has made it clear both in plaintiff's legal memorandum and at oral argument that she believes discovery will produce evidence creating a genuine issue of fact as to many of Grant's claims. Grant's attorney has also identified the kind of evidence that discovery might produce that would be of benefit to supporting Grant's allegations. Under these circumstances, the court finds that Grant and his attorney have

7

"otherwise ask[ed] for a continuance." In re TMJ Litigation, 113 F.3d at 1490. The court also finds that many of the legal issues involved in this suit are such that a failure to allow Grant to conduct discovery would deprive him of a fair opportunity to respond to defendants' motion. Accordingly, the court must deny defendants' motion for summary judgment.

C. **Defendants' Arguments in Support of Summary Judgment**

To clarify the scope of the legal issues at stake in this suit, however, the court will briefly address the arguments made by defendants in their motion for summary judgment.

1. **Defendant Golden**

   a. **Personal Jurisdiction**

Defendants first argue that the court lacks personal jurisdiction over Golden and must therefore dismiss him from the case entirely. A federal court may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by constitutional due process. Wessels, Arnold & Henderson v. National Medical Waste, Inc., 65 F.3d 1427, 1431 (8th Cir.1995). Minnesota state courts have held that the Minnesota Legislature intended the state's long-arm statute to have the maximum extraterritorial effect allowed under the Constitution; thus, the court must consider whether the

8

assertion of jurisdiction over D&G is consistent with due process. See Minnesota Mining & Manufacturing v. Nippon Carbide Indus., 63 F.3d 694, 697 (8th Cir.1995). Due process is satisfied when non-resident defendants have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, 326 U.S. 310, 316, (1945). In determining the sufficiency of defendant's contacts, the court considers several factors: (1) the quantity of contacts with the forum state; (2) the nature and quality of contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. See Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 819 (8th Cir.1994); Sybaritic, Inc. v. Interport Int'l, Inc., 957 F.2d 522, 524 (8th Cir.1992) (explaining that the analytical framework incorporates the notions of both "minimum contacts" and "fair play and substantial justice"). Given the intensely fact-based nature of this inquiry, the court believes that plaintiff should be given a fuller opportunity to discover what contacts defendant Golden has had with Minnesota both relating to and separate from the factual events underlying this litigation.

9

### b.  Specific Claims

That being said, it appears that two of Grant's claims against defendant Golden are not viable. First, because Golden was not a signatory to the settlement agreement between Grant and NBME, he cannot be sued for any breach of the settlement agreement. Second, Grant cannot state a cause of action against Golden under § 42 U.S.C. 12189 because Golden does not himself "offer examinations." See also 28 C.F.R. § 36.309(a) (1997) (stating that § 12189 applies to "[a]ny private entity that offers examinations"). Accordingly, Counts I and VI must be dismissed insofar as they apply to Golden.

### 2.  Release and Fraudulent Misrepresentation

The cornerstone of defendants' summary judgment motion is their contention that the settlement agreement reached between Grant and NBME bars Grant's suit insofar as it is based on events taking place prior to July 9, 1998. An unambiguous release will bar subsequent claims related to the underlying action if it was given knowingly and voluntarily. See, e.g., Warnebold v. Union Pac. R.R., 963 F.2d 222, 223 (8th Cir. 1992); Lancaster v. Buerkle Buick Honda Co., 809 F.2d 539, 541 (8th Cir. 1987). "Absent allegations of fraud or duress, a clear and unambiguous release of claims against a party bars a plaintiff from bringing a subsequent action based on the same facts as underlie the settled claims."

10

Breen v. Norwest Bank Minn., N.A., 865 F. Supp. 574, 577-78 (D. Minn. 1994).

Here, Grant has alleged that the July 9, 1998 settlement agreement was procured both by duress and by fraud. With respect to his duress allegation, Grant must show "that he involuntarily accepted the terms of the release, that the circumstances allowed only that alternative, and that the other party created the compelling circumstances through coercive acts." Sorensen v. Coast-to-Coast Stores (Central Organization), Inc., 353 N.W.2d 666, 670 (Minn. Ct. App. 1984). However, "duress will not be sustained when the claimant entered into the contract with full knowledge of all the facts, advice from an attorney, and ample time for reflection." St. Louis Park Investment Co. v. R.L. Johnson Investment Co., 411 N.W.2d 288, 291 (Minn. Ct. App. 1987). It is debatable whether the factual circumstances alleged by Grant in his complaint and affidavit support a duress claim. However, the court will reserve judgment on the issue until a fuller evidentiary picture emerges.

Grant's allegation that the settlement agreement was fraudulently procured dovetails with his fraudulent misrepresentation claim in Count V of his complaint. Grant contends that NBME induced him into signing the settlement

11

agreement by misrepresenting its intent to fairly re-score his August 1998 examination and to not retaliate against him when scoring future examinations. Defendants correctly point out that, under Minnesota law, even a bad faith breach of contract cannot be converted into a fraud claim. See Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1392 (8th Cir. 1997) (applying Minnesota law). However, where "the plaintiff shows 'affirmative evidence' that the promisor had no intention to perform," a fraud claim may lie against a contracting party. Id. See also Barry v. Barry, 78 F.3d 375, 380 (8th Cir. 1996) (holding that release procured by fraudulent misrepresentations may both invalidate a release and support an independent fraud claim). Because Grant has properly pleaded a fraudulent inducement claim against NBME, the court must permit him to conduct discovery on the issue.

3. **ADA Claims**

Defendants next contend that Grant's failure to accommodate and retaliation claims under Title III of the ADA are not justiciable. The court agrees that Grant's failure to accommodate claim in Count I is moot in light of the following: (1) Title III of the ADA entitles plaintiffs to injunctive relief only, see 42 U.S.C. § 12188(a)(1) (adopting the remedies of 42 U.S.C. § 2000a-

3(a)); 42 U.S.C. § 12203(c)(adopting the remedies of section 12188 for retaliation claims based upon violations of Title III); <u>NewMan v. Piggie Park Enters., Inc.</u>, 390 U.S. 400, 402 (1968) (holding that no compensatory relief is afforded by 42 U.S.C. § 2000a-3(a)); (2) NBME provided Grant his requested accommodation on the August 1997 Step 2 exam and on all subsequent exams; and (3) NBME does not determine accommodations for the Step 3 exam.  However, the court must wait to see what discovery produces concerning NBME's alleged retaliatory conduct before determining whether Grant has standing to bring his ADA retaliation claim.

### 4. MHRA Claims

Defendants also challenge Grant's MHRA claims on the ground that NBME's testing activities do not fall within the purview of MHRA.  Plaintiffs argue that NBME is both a public accommodation pursuant to Minn. Stat. § 363.03, subd. 3, and a person engaged in a trade or business or in the provision of a service under contract pursuant to § 363.03, subd. 8a.

The court agrees with defendants that NBME is not a public accommodation.  "Whether an entity is public or private [for purposes of § 363.03, subd. 3] hinges on two criteria: (1) selectiveness of the group in the admission of members; and (2) the existence of limits on the size of the membership." <u>Wayne</u>

v. Mastershield, Inc., 597 N.W.2d 917, 919 (Minn. Ct. App. 1999). See also U.S. Jaycees v. McClure, 305 N.W.2d 764, 770 (Minn. 1981); Gold Star Taxi & Transportation Serv. v. Mall of America Co., 987 F. Supp. 741, 752 (D. Minn. 1997). It is not disputed, however, that the NBME is extremely selective in determining who may take the tests it offers: NBME offers its exams only to medical students who meet certain eligibility requirements. Because NBME "invites only a screened, selected portion of the public" to take its exams, McClure, 305 N.W.2d at 773, the court concludes that NBME is not a public accommodation within the meaning of § 363.03, subd. 3.

However, on the slim record before it, the court cannot resolve the issue of whether NBME falls within the ambit of § 363.03, subd. 8a, which prohibits businesses and providers of services from discriminating in the performance of contracts with persons because of their protected status. Before addressing the issue, the court must give Grant the chance to introduce evidence that he and NBME were in a contractual relationship of the kind contemplated by MHRA.

### 5. Statute of Limitations

Finally, defendants argue that even if Grant's ADA and MHRA claims are otherwise viable, they are largely barred by a one-year statute of limitations. Grant disputes this argument on several

14

grounds, including his assertion that NBME's pattern of conduct constitutes a continuing violation that is actionable notwithstanding any statutory time limits. With so many preliminary factual issues unresolved in this case, the court believes it would be prudent to wait until after discovery before ruling on the statute of limitations issues.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for summary judgment is granted in part and denied in part.

2. Plaintiff's claims of failure to accommodate (Count I) and negligent misrepresentation (Count IV) are dismissed with prejudice.

3. Plaintiff's breach of contract claim is dismissed with prejudice insofar as it applies to defendant Golden.

4. Plaintiff shall be permitted to conduct discovery on his remaining claims.

Dated: October ___, 1999

David S. Doty, Judge
United States District Court